ORAL ARGUMENT REQUESTED

No. 25-2009

_____

UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

_____

LUCIA F. SANCHEZ; MICHAEL F. SANCHEZ JR.;
ERIK BRIONES; RICHARD JENKINS; and ROLAND RIVERA,
Plaintiffs – Appellants,

v.

RAUL TORREZ, in his official capacity as Attorney General of New Mexico;
RICHARD STUMP, in his official capacity as Chair of the New Mexico State
Game Commission; SHARON SALAZAR HICKEY, in her official capacity as
Vice-Chair of the New Mexico State Game Commission; TIRZIO LOPEZ, in his
official capacity as a member of the New Mexico State Game Commission;
GREGG FULFER, in his official capacity as a member of the New Mexico State
Game Commission; DR. SABRINA PACK, in her official capacity as a member of
the New Mexico State Game Commission; EDWARD GARCIA, in his official
capacity as a member of the New Mexico State Game Commission; FERNANDO
CLEMENTE JR., in his official capacity as a member of the New Mexico
State Game Commission; and MICHAEL SLOANE, in his official capacity
as Director of the New Mexico Department of Game & Fish,
Defendants – Appellees.

_____

On Appeal from the United States District Court
for the District of New Mexico
Honorable Kea W. Riggs, District Judge
Case No. 1:24-cv-00646-KWR-LF

_____

**APPELLANTS' REPLY BRIEF**

_____

CHRISTOPHER M. KIESER
JEREMY TALCOTT
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, California 95814
Telephone: (916) 419-7111
CKieser@pacificlegal.org
JTalcott@pacificlegal.org

MARK L. ISH
Felker, Ish, Ritchie, Geer &
 Winter, P.A.
911 Old Pecos Trail
Santa Fe, New Mexico 87505
Telephone: (505) 988-4483
markish@felkerishlaw.com

AVERY G. RANUM
Pacific Legal Foundation
3100 Clarendon Blvd., Suite 1000
Arlington, Virginia 22201
Telephone: (202) 888-6881
ARanum@pacificlegal.org

*Attorneys for Plaintiffs – Appellants*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................... ii

GLOSSARY .......................................................................................... vi

INTRODUCTION .................................................................................. 1

ARGUMENT .......................................................................................... 3

   I.   The Landowners Plausibly Alleged Jurisdiction ............................. 3

      A.   The Landowners Have Standing ............................................. 3

      B.   The State Officials Lack Sovereign Immunity ..................... 12

      C.   The State Officials' Additional Arguments Lack Merit ....... 20

   II.   The Landowners Plausibly Alleged a Takings Claim .................. 24

CONCLUSION ..................................................................................... 27

CERTIFICATE OF COMPLIANCE ..................................................... 28

# TABLE OF AUTHORITIES

## Cases

*74 Pinehurst LLC v. New York*,
    59 F.4th 557 (2d Cir. 2023) ..............................................................19

*Adobe Whitewater Club of New Mexico v.*
*New Mexico State Game Commission*,
    519 P.3d 46 (N.M. 2022) ..............................................................1–2

*Barr v. Am. Ass'n of Political Consultants, Inc.*,
    591 U.S. 610 (2020)..........................................................................11

*Bond v. United States*,
    564 U.S. 211 (2011)..........................................................................22

*Brown v. Board of Education*,
    347 U.S. 483 (1954)............................................................................8

*Bruce v. City & Cnty. of Denver*,
    57 F.4th 738 (10th Cir. 2023) ....................................................23–24

*Cedar Point Nursery v. Gould*,
    No. 1:16-cv-00185, 2016 WL 1559271 (E.D. Cal. Apr. 18, 2016)....................20

*Cedar Point Nursery v. Hassid*,
    594 U.S. 139 (2021)..............................................2, 5, 13, 25–26

*Chicago, B. & Q.R. Co. v. City of Chicago*,
    166 U.S. 226 (1897)....................................................................5, 22

*Chiles v. Salazar*,
    116 F.4th 1178 (10th Cir. 2024) ......................................................7

*Consumer Data Industry Ass'n v. King*,
    678 F.3d 898 (10th Cir. 2012) ........................................................11

*Cooper v. Aaron*,
    358 U.S. 1 (1958)........................................................................5, 12

*Edelman v. Jordan*,
    415 U.S. 651 (1974)..........................................................................13

*Espinoza v. Montana Dep't of Revenue*,
    591 U.S. 464 (2020)............................................................................5

*Ex parte Young*,
209 U.S. 123 (1908)............................................................2

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
544 U.S. 280 (2005)......................................................23–24

*FBI v. Fikre*,
601 U.S. 234 (2024).........................................................20

*Frank v. Lee*,
84 F.4th 1119 (10th Cir. 2023) ......................................6, 8

*Hacienda Valley Mobile Estates v. City of Morgan Hill*,
353 F.3d 651 (9th Cir. 2003) ...........................................20

*Hall v. Meisner*,
51 F.4th 185 (6th Cir. 2022) ..............................................4

*Hill v. Kemp*,
478 F.3d 1236 (10th Cir. 2007) ...................................15–16

*Idaho v. Coeur d'Alene Tribe of Idaho*,
521 U.S. 261 (1997).....................................................16–17

*Indus. Servs. Grp., Inc. v. Dobson*,
68 F.4th 155 (4th Cir. 2023) ............................................13

*Initiative & Referendum Inst. v. Walker*,
450 F.3d 1082 (10th Cir. 2006) .......................................5–6

*Johnson v. Spencer*,
950 F.3d 680 (10th Cir. 2020) ..........................................24

*Kaiser Aetna v. United States*,
444 U.S. 164 (1979).........................................................25

*Knick v. Twp. of Scott*,
588 U.S. 180 (2019)...............................................14–15, 18

*Lance v. Dennis*,
546 U.S. 459 (2006).........................................................22

*Manhattan Cmty. Access Corp. v. Halleck*,
587 U.S. 802 (2019).........................................................26

*Muscogee (Creek) Nation v. Pruitt*,
669 F.3d 1159 (10th Cir. 2012) ........................................12

*N. Mill Street, LLC v. City of Aspen,*
6 F.4th 1216 (10th Cir. 2021) ...............................................20

*Nova Health Systems v. Gandy,*
416 F.3d 1149 (10th Cir. 2005) ............................................11

*Obergefell v. Hodges,*
576 U.S. 644 (2015).................................................................8

*Pavlock v. Holcomb,*
35 F.4th 581 (7th Cir. 2022) ............................................10–11

*Pennhurst State Sch. & Hosp. v. Halderman,*
465 U.S. 89 (1984)...........................................................19–20

*Phillips v. Wash. Legal Found.,*
524 U.S. 156 (1998).................................................................5

*Quackenbush v. Allstate Ins. Co.,*
517 U.S. 706 (1996).........................................................20–21

*Riley v. Kennedy,*
553 U.S. 406 (2008)...............................................................11

*Romer v. Evans,*
517 U.S. 620 (1996).................................................................8

*Royal Canin U.S.A. v. Wullschleger,*
604 U.S. 22 (2025)............................................................3, 14

*Sheetz v. Cnty. of El Dorado,*
601 U.S. 267 (2024)...............................................................26

*Spokeo, Inc. v. Robins,*
578 U.S. 330 (2016).................................................................3

*Sprint Commc'ns, Inc. v. Jacobs,*
571 U.S. 69 (2013).................................................................21

*Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.,*
560 U.S. 702 (2010)...............................................................26

*Susan B. Anthony List v. Driehaus,*
573 U.S. 149 (2014)...........................................................4, 15

*Tyler v. Hennepin County,*
598 U.S. 631 (2023)..........................................................4–5, 25

*Va. Off. for Prot. & Advocacy v. Stewart*,
  563 U.S. 247 (2011)...............................................................................19

*Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*,
  535 U.S. 635 (2022)...............................................................................16

*Warth v. Seldin*,
  422 U.S. 490 (1975).................................................................................7

*Webb's Fabulous Pharmacies, Inc. v. Beckwith*,
  449 U.S. 155 (1980).................................................................................1

*Whole Woman's Health v. Jackson*,
  595 U.S. 30 (2021)................................................................................2, 6

*Williams v. Utah Department of Corrections*,
  928 F.3d 1209 (10th Cir. 2019) ..........................................................18–19

*Williamson Cnty. Regional Planning Comm'n v. Hamilton Bank of
  Johnson City*,
  473 U.S. 172 (1985)...............................................................................18

*Winsness v. Yocom*,
  433 F.3d 727 (10th Cir. 2006) ................................................................4

## U.S. Constitution

U.S. Const. art. VI, cl. 2.....................................................................5, 9, 11

## Rule

Fed. R. Civ. P. 12.................................................................................26

# GLOSSARY

AOB – Appellants' Opening Brief

App. – Appellants' Appendix

Resp. – Defendants-Appellees' Response Brief

**INTRODUCTION**

Five New Mexico landowners brought this action to protect their historic right to exclude the public from their private streambeds. Since the New Mexico Supreme Court decreed public access to the streambeds in 2022, state officials have aggressively enforced these new public rights without offering the landowners any compensation. The landowners sued the officials to halt this enforcement, because "a State, by *ipse dixit*, may not transform private property into public property without compensation." *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 164 (1980).

Simply put, the landowners have standing because they plausibly alleged a credible threat of prosecution—and in some cases, actual prosecution—by the state officials, and sought an injunction to redress their ongoing injury. Sovereign immunity does not bar the landowners' claims because they seek prospective relief against individual state officers in their official capacity. And on the merits, the landowners plausibly alleged the state officials are enforcing a taking of their right to exclude the public from the streambeds—a right all three branches of New Mexico government recognized until 2022.

At virtually every turn, the state officials accuse the landowners of seeking a second bite at the apple. The state officials repeatedly claim that the landowners ask this Court to overrule the New Mexico Supreme Court's decision in *Adobe*

1

*Whitewater Club of New Mexico v. New Mexico State Game Commission*, 519 P.3d 46 (N.M. 2022). *See, e.g.*, Resp. at 6 ("Plaintiffs filed their claims in federal court to collaterally attack *Adobe Whitewater*." (capitalization omitted)); *see also id.* at 2–9, 13, 16–20, 22–23, 26–28, 40–42. That is wrong. The landowners were not party to *Adobe Whitewater*. They do not contest *Adobe Whitewater*'s pronouncement of state law. *See* AOB at 31 n.7; *id.* at 44 ("the landowners do not seek relief against the *Adobe Whitewater* decree itself"). And they certainly do not ask this Court to overrule a New Mexico Supreme Court opinion.

In reality, the landowners' position is straightforward: When state officials enforce state law to prosecute the landowners for exercising their right to exclude, the state officials violate the landowners' *federally* protected property rights. *See Cedar Point Nursery v. Hassid*, 594 U.S. 139, 149, 155 (2021). So the landowners sought an injunction prohibiting the state officials from continuing to do so.

A ruling in the landowners' favor would break no new ground. This Court need not pass on the New Mexico Supreme Court's interpretation of state law. The landowners simply seek to restrain the state officials from enforcing the law. An unbroken line of Supreme Court precedent from *Ex parte Young*, 209 U.S. 123 (1908), to *Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021), confirms that plaintiffs may seek prospective relief against state officials charged with enforcing

a state law that violates the plaintiffs' federal rights. That is true regardless of whether the state officials enforce a state statute or the state constitution.

At bottom, the state officials assail a straw complaint. But the landowners are "the master[s] of the complaint." *Royal Canin U.S.A. v. Wullschleger*, 604 U.S. 22, 35 (2025) (quotation omitted). The landowners, not the officials, are entitled to choose the claims they assert, the allegations they make, and the defendants they sue. "And in so doing, [they] can establish—or not—the basis for a federal court's subject-matter jurisdiction." *Id.* Here, the landowners plausibly alleged that state law effects a taking without compensation. They sought prospective relief against state officials who enforce the law against them. At the motion to dismiss stage, no more is required.

## ARGUMENT

### I. The Landowners Plausibly Alleged Jurisdiction

#### A. The Landowners Have Standing

At the pleading stage, the landowners must plausibly allege that they "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The landowners plausibly alleged (1) a credible threat of future prosecution (2) by the state officials and (3) sought an injunction prohibiting such prosecution. The landowners therefore have standing.

***1. Injury in fact.*** The district court correctly found that each landowner plausibly alleged a "credible threat of prosecution." App. 1, 175–76[1] (citing *Winsness v. Yocom*, 433 F.3d 727, 732 (10th Cir. 2006); *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). For instance, the landowners' alleged that the state officials have "'taken active steps'" to prosecute "similarly situated landowners who do not permit public access to their streambeds, including Plaintiffs in this case." App. 176 (quoting the complaint). Accordingly, the court correctly concluded that "all Plaintiffs suffered an injury in fact." App. 175.

The state officials do not dispute that the landowners are under threat of prosecution. They instead insist that the district court's injury finding "depend[s] on a federal court rejecting binding state precedent" holding that there is no property interest in the right to exclude. Resp. at 22. That is both wrong and irrelevant to the landowners' standing.

For starters, the officials' position would allow a state simply to disavow the existence of any property interest it wished to take, rendering the Takings Clause "a dead letter." *Tyler v. Hennepin County*, 598 U.S. 631, 638 (2023) (quoting *Hall v. Meisner*, 51 F.4th 185, 190 (6th Cir. 2022)). That is why the Supreme Court has emphasized that "state law cannot be the only source" of property rights. *Id.*; *see*

---

[1] Because Appellants' Appendix contains only one volume, it is later cited simply as "App."

*also Cedar Point*, 594 U.S. at 155; *contra* Resp. at 20 ("scope of property rights is defined by state law"). Whether the landowners traditionally had the right to exclude the public from their streambeds also depends on "traditional property law principles" and "historical practice," like a state's prior recognition of the right. *Tyler*, 598 U.S. at 638 (quoting *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 167 (1998)).

The state officials are likewise wrong to suggest that the landowners seek a ruling that "contradicts controlling state law." Resp. at 22 n.6. The landowners do not challenge the state court's interpretation of the state constitution. The landowners instead ask this Court to determine whether the state constitution, so interpreted, is consistent with the federal Constitution—a power the federal courts surely possess. *See* U.S. Const. art. VI, cl. 2; *Cooper v. Aaron*, 358 U.S. 1, 18 (1958); *Chicago, B. & Q.R. Co. v. City of Chicago*, 166 U.S. 226, 236 (1897) (incorporating the Takings Clause); *see, e.g.*, *Espinoza v. Montana Dep't of Revenue*, 591 U.S. 464, 488 (2020) (holding that a provision of the Montana Constitution, as interpreted by the Montana Supreme Court, violated the First Amendment).

But most importantly, the state officials "put the merits cart before the standing horse." *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1093 (10th Cir. 2006) (en banc). As the en banc Court explained, when a plaintiff plausibly alleges "an injury to a protected right such as free speech, the federal courts may not

dismiss for lack of standing on the theory that the underlying interest is not legally protected." *Id*. The district court found, and the state officials do not dispute, that the landowners plausibly alleged such an injury—a credible threat of prosecution for exercising their federally protected property right. App. 175–76. For the purposes of standing, that is enough.

*2. Traceability.* The state officials are responsible for this threat, so the injury is traceable to them. AOB at 20. The district court's view—that traceability is missing because the state officials are "constitutionally required" to enforce state law, App. 178—turns the inquiry on its head. Ordinarily, that fact would be dispositive *in favor* of traceability because such a finding "*requires* the named defendants to possess authority to enforce the complained-of provision." *Frank v. Lee*, 84 F.4th 1119, 1135 (10th Cir. 2023) (emphasis added); *see* AOB at 21. For instance, in *Whole Woman's Health v. Jackson*, the challengers could sue under "Article III precedents" *because* the law "appear[ed] to *impose a duty* on the licensing-official defendants to bring disciplinary actions against them." 595 U.S. at 47 (emphasis added).

The state officials do not expressly defend the district court's "constitutionally required" rule. Nor do they disclaim authority to enforce the public access requirement. Yet they insist that the state court's interpretation of the state

constitution is "the source of" the landowners' injury, which they characterize as "the loss of their claimed property right." Resp. at 18. That is wrong on both counts.

For one, the state officials (again) mischaracterize the landowners' injury. The injury is the threat of prosecution. Although the landowners ultimately must demonstrate the taking of a federal property right to prevail, that "merits analysis [is] not coextensive" with "the threshold justiciability inquiry" that "'in no way depends on the merits of the plaintiff's contention that particular conduct is illegal.'" *Chiles v. Salazar*, 116 F.4th 1178, 1196 n.15 (10th Cir. 2024) (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)). Instead, as the state officials belatedly concede, the landowners need only "plausibly allege that the enforcement actions of the state officials cause[]" their injury in fact. Resp. at 19. Tellingly, the state officials do not dispute that they *are* engaged in enforcement.

The state officials' claim that the state court is "the source of" the landowners' injury, Resp. at 18, is similarly misguided. The state court did not "sen[d] letters warning" the landowners to "remove signage," "sue[] Plaintiff Briones," or "announce[] that 'it is actively investigating allegations'" against similarly situated landowners. App. 172 (quoting the complaint). The state officials did. *Adobe Whitewater* is no more the "source" of the landowners' injuries than the state legislature is the "source" of the injury in every case where the plaintiff seeks to enjoin the enforcement of state law. Yet in such cases, the injury is fairly traceable

to those officials who prospectively enforce the law, not the legislature's past action. *See, e.g.*, *Frank*, 84 F.4th at 1135. The state officials offer no reason why the rule should be different because they enforce a ruling interpreting the state constitution.

Indeed, the state officials' theory would have breathtaking implications. Consider *Romer v. Evans*, in which the Supreme Court held that Colorado's popularly-enacted constitutional amendment prohibiting treating members of the LGBT community as a protected class violated the Equal Protection Clause. 517 U.S. 620 (1996). There, individual plaintiffs sued the governor and attorney general to "enjoin its enforcement." *Id.* at 625. Under the state officials' theory, those plaintiffs lacked standing because Colorado voters were "the source of" the constitutional amendment. The same would have been true for the Michigan plaintiffs in *Obergefell v. Hodges*, who challenged a provision of the Michigan Constitution limiting marriage to opposite-sex couples by suing "state officials responsible for enforcing the law[]." 576 U.S. 644, 655 (2015). Nor would the South Carolina, Virginia, or Delaware plaintiffs have had standing to sue to "enjoin enforcement" of the state constitutional provisions mandating grade school segregation in *Brown v. Board of Education*, 347 U.S. 483, 486 n.1 (1954).

In the end, the state officials' theory is no better than the district court's "constitutionally required" rule. Both subordinate federal constitutional rights to the state officials' supposed duty to enforce state law contrary to those rights. Because

the landowners have alleged that state officials are enforcing *Adobe Whitewater*'s interpretation of state law in a manner that penalizes the landowners for exercising their right to exclude the public from their private streambeds, the landowners' injury is traceable to those officials' actions.

3. ***Redressability.*** An injunction prohibiting the state officials from prosecuting the landowners would redress the injury the state officials cause. The district court thought itself powerless "to declare a provision of the state constitution unenforceable" because it is inconsistent with the federal Constitution. AOB at 28. That was wrong. The federal Constitution is "the supreme Law of the Land." U.S. Const. art. VI, cl. 2.

In response, the state officials largely repeat the district court's flawed reasoning. First, the state officials insist that "no federal court has the authority to overturn the New Mexico Supreme Court's articulation of state law." Resp. at 13. But again, no one is asking for that.[2] All the landowners request is a determination that state law "as decreed in the New Mexico Supreme Court's *Adobe Whitewater* decision constitutes a per se taking," and a corresponding injunction prohibiting the state officials from enforcing it. App. 031 (complaint's prayer for relief). As the

---

[2] The state officials here repeat their argument that *Adobe Whitewater* held that the landowners lacked "the property right essential" to their claim. Resp. at 13. This is irrelevant to standing. *See supra* at 4–5.

landowners note above, a federal court surely has the power to enjoin enforcement of a state constitutional provision that infringes on a federally-protected right.

The state officials' reliance on the nonbinding *Pavlock* decision is similarly misplaced. *See* Resp. at 13–15. *Pavlock* did not hold that a federal court may never enjoin enforcement of state law under the Takings Clause. Indeed, it recognized that the Supreme Court approved such a remedy in *Cedar Point*. *Pavlock v. Holcomb*, 35 F.4th 581, 590 (7th Cir. 2022). And *Pavlock*'s result is easily distinguishable.[3] None of the named officials in that case had taken any discrete enforcement actions. *See id.* The case also involved a state's assertion of *title* to property, which the Seventh Circuit thought precluded standing because none of the named officials "ha[d] the power to confer title on the" plaintiffs. *Id.* at 589. In that court's view, injunctive relief could not remedy the plaintiffs' asserted injury—loss of title to the state. *See id.* But here, title is not in dispute—the landowners simply want to restrain enforcement actions. So this case is like *Cedar Point*, which the *Pavlock* court recognized was different because the "court could redress that injury prospectively by enjoining enforcement of" the challenged regulation. *Id.* at 590. The same is true

---

[3] The state officials suggest that the landowners' decision to employ the same counsel as the *Pavlock* plaintiffs is somehow relevant to the standing analysis. Resp. at 14. This is irrelevant and highly inappropriate. The parties in both cases were entitled to choose counsel they believed would best represent their interests.

here—prospective injunctive relief would halt enforcement, remedying the injuries the landowners pleaded.[4]

Finally, the state officials claim that "the injunction Plaintiffs seek would not change the fact that the New Mexico Constitution forbids Plaintiffs from excluding others." Resp. at 16. But an injunction would prohibit the state officials from prosecuting the landowners for exercising their right to exclude, directly redressing the injury the landowners pleaded.[5] And this relief might do more than the state officials expect. At the very least it would make it more difficult for third parties to access the landowners' private streambeds. But that is all irrelevant as far as this case is concerned, because even if a favorable judgment would have no effect on nonparties, it would not defeat redressability.

---

[4] To the extent that *Pavlock* suggested that the landowners' injuries were not redressable because their success would "not change the content of the underlying law itself," *id.* at 590, it was wrong. "[A] state law may not be enforced if it conflicts with federal law." *Riley v. Kennedy*, 553 U.S. 406, 427 (2008) (citing U.S. Const. art. VI, cl. 2). Federal courts lack the power to "change the content" of state law, but do have the power to order named parties not to enforce an unconstitutional law. *See Barr v. Am. Ass'n of Political Consultants, Inc.*, 591 U.S. 610, 627 n.8 (2020) (explaining that federal courts do not "formally repeal" unconstitutional laws).

[5] Redressability does not require that a favorable judgment solve a plaintiff's every problem. *See* AOB at 22–28. The state officials rely on *Nova Health Systems v. Gandy*, 416 F.3d 1149 (10th Cir. 2005), but do not even cite this Court's more recent precedent, *Consumer Data Industry Association v. King*, 678 F.3d 898, 905 (10th Cir. 2012), which clarified that "[s]o long as the plaintiff faces a credible threat of enforcement, redressability is generally not an obstacle."

## B.    The State Officials Lack Sovereign Immunity

Under *Ex parte Young*, sovereign immunity does not bar claims against "individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief." *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012). Here, the landowners sued state officials acting in their official capacities for ongoing enforcement actions that the landowners allege violate federal law. The landowners seek prospective relief in the form of an injunction prohibiting future enforcement. Accordingly, sovereign immunity does not bar their claims.

*1. Prospective relief.* The landowners seek prospective relief: an injunction prohibiting future prosecution. In finding otherwise, the district court, without explanation, "assume[d] that executive officials are bound to continue enforcing" an enjoined law. App. 181. Based on that assumption, the court reasoned that the state would be "require[d]" "to provide 'just compensation,'" implicating sovereign immunity. *Id.* But as the landowners explained, federal courts frequently "enjoin state officials from enforcing … state constitutional provision[s]." AOB at 33. And state officials must comply with federal injunctions even if doing so contradicts their obligations under state law. *Cooper*, 358 U.S. at 18.

In response, the state officials waffle between two contradictory positions: (1) that the landowners' "claim necessarily would implicate compensation for past

conduct," and (2) that they "demand[] a remedy the Fifth Amendment does not allow: a permanent injunction." Resp. at 31; *see also id.* at 35. Neither is tenable.

To start, an injunction would not implicate the state treasury. It would only require the state officials to "conform [their] future conduct" to federal law. *Edelman v. Jordan*, 415 U.S. 651, 664 (1974). An injunction would not order them to pay any money, nor would compliance require any expenditure. AOB at 34. The state officials could comply simply by ceasing their enforcement actions. Of course, if the state believes public access to the landowners' streambeds is important enough, it *could choose* to compensate the landowners. Then, the officials' enforcement of state law would no longer violate the Takings Clause, and they could seek relief from the judgment under Federal Rule of Civil Procedure 60.[6] But that doesn't transform the prospective injunctive relief the landowners seek into retrospective monetary relief barred by sovereign immunity. At bottom, the landowners seek the "quintessential example[] of prospective injunctive relief": an injunction to "prohibit [the state officials] from any *additional* or *future* allegedly unlawful actions." *Indus. Servs. Grp., Inc. v. Dobson*, 68 F.4th 155, 165 (4th Cir. 2023).

The state officials, without explanation, accuse the landowners of plotting to "use [the court's] ruling to demand compensation for the restrictions on their

---

[6] Justice Breyer alluded to this in his *Cedar Point* dissent, noting that California could cure the violation by providing just compensation. 594 U.S. at 179.

activities they undertook to comply" with state law. Resp. at 36. That accusation is baseless. Nowhere do the landowners ask for a determination of compliance costs, nor will they seek to recover such costs in the future. The landowners seek only an injunction prohibiting *future* prosecution. Granting that relief would not entitle them to *any* compensation, let alone compensation for *past* injuries.

The state officials next fault the landowners for "plead[ing] around" sovereign immunity by "avoiding a request for compensation in their prayer for relief." Resp. at 31. But they point to nothing that requires plaintiffs to seek every remedy to which they theoretically could be entitled, especially if doing so would destroy jurisdiction. As the Supreme Court just recognized, plaintiffs are entitled to "establish—or not— the basis for a federal court's subject-matter jurisdiction" through their pleadings. *Royal Canin U.S.A.*, 604 U.S. at 35. That is no more gamesmanship than it is for a defendant to raise every conceivable jurisdictional objection in a motion.

The state officials ultimately admit that "it is plain from the face of the complaint" that the landowners' seek "an injunction." Resp. at 32. They then claim that "the Fifth Amendment does not allow" that relief because it prohibits only takings without just compensation. *Id.* at 31. But they misapply that condition precedent: they must *actually offer* just compensation "at the time of the taking" to avoid a constitutional violation. *Knick v. Twp. of Scott*, 588 U.S. 180, 194 (2019). Once an uncompensated taking has occurred, a landowner may immediately seek

relief in federal court. *Id.* Equitable relief is unavailable if an "adequate provision for obtaining just compensation exists," *id.* at 201; *see also id.* at 207 (Thomas, J., concurring) (explaining that the majority applies the general rule that "[i]njunctive relief is not available when an adequate remedy exists at law"), but *Cedar Point* demonstrates that when sovereign immunity precludes a legal remedy, injunctive relief is available. Without an adequate remedy at law, the landowners seek prospective injunctive relief in federal court, which they are entitled to do.

Finally, the state officials' insistence that the landowners' complaint "focuses on the past" because it cites "actions" that "happened and concluded in the past" borders on frivolous. Resp. at 30. Those factual allegations support the landowners' pre-enforcement standing (which the state officials simultaneously claim the landowners lack, *see* Resp. at 20) by demonstrating a credible threat of prosecution. *See Susan B. Anthony List*, 573 U.S. at 164 ("past enforcement against the same conduct is good evidence" of a credible threat of prosecution). And tellingly, the state officials do not disclaim their intent to continue enforcement.

**2. *Coeur d'Alene.*** As this Court has recognized, "the Supreme Court [has] clarified that the courts of appeals need not (and should not) linger over the question whether 'special' or other sorts of sovereign interests are at stake before analyzing the nature of the relief sought." *Hill v. Kemp*, 478 F.3d 1236, 1259 (10th Cir. 2007) (Gorsuch, J.). "Instead, the Supreme Court has instructed that [courts] are to proceed

immediately in every case to the 'straightforward [or so one might hope] inquiry' whether the relief requested is 'properly' characterized as prospective or is indeed the functional equivalent of impermissible retrospective relief." *Id.* (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2022)) (second alteration in original). As explained above, the landowners seek solely prospective relief. That dooms the state officials' argument for sovereign immunity even under *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997).

*Coeur d'Alene* has been limited to its peculiar facts—facts that do not resemble this case. *Coeur d'Alene* involved a dispute "by sovereigns against sovereigns." *Id.* at 268. Sovereign immunity precluded relief that went "well beyond the typical stakes in a real property quiet title action": "a determination that the lands in question are not even within the regulatory jurisdiction of the State." *Id.* at 282; *accord id.* at 296 (O'Connor, J., concurring in part and in the judgment). But outside that "unusual" case, "[a]n allegation of an ongoing violation of federal law where the requested relief is prospective is ordinarily sufficient to invoke the *Young* fiction." *Id.* at 281; *accord id.* at 288 (O'Connor, J., concurring in part and in the judgment). The landowners are not separate sovereigns and could not seek to divest the state of sovereignty over the streambeds. So *Coeur d'Alene* does not apply.

The state officials respond that the landowners "seek[] to completely extinguish the state control the New Mexico Supreme Court determined the state

maintains." Resp. at 34. Hyperbole aside, no one questions the state's sovereignty or "regulatory jurisdiction" over the streambeds. *See Coeur d'Alene*, 521 U.S. at 282 (majority opinion). Were the landowners to succeed, the state could still regulate the landowners' property to the same extent it can regulate all other private property within its borders. In any event, if New Mexico had some "special sovereign[] interests" in providing public access to the landowners' streambeds, Resp. at 34, it might have asserted them before 2022. *See* App. 013, 022–23.

Relying on dicta from *Coeur d'Alene*, the state officials insist that the landowners' claims "are the 'functional equivalent' of quiet title actions." Resp. at 32; *see also id.* at 34. But the Supreme Court didn't turn away the Tribe's case because it involved an ownership dispute. Instead, the Tribe lost because it sought relief that went "well beyond the typical stakes in a real property quiet title action." 521 U.S. at 282; *accord id.* at 296 (O'Connor, J., concurring in part and in the judgment).[7] Besides, the landowners already hold title to the streambeds. What the landowners seek is instead consistent with the traditional remedy for a taking at

---

[7] As the landowners previously explained, the "quiet title" *dicta* does not explain the result in *Coeur d'Alene*. AOB at 39–40. The Tribe lost because the majority concluded "special sovereignty interests" warranted departing from the usual *Young* rule. *Coeur d'Alene*, 521 U.S. at 281 (majority opinion) ("We must examine the effect of the Tribe's suit and its impact on these special sovereignty interests in order to decide whether the *Ex parte Young* fiction is applicable."). Short of a contest between sovereigns over sovereignty, no such interests exist.

common law: "an injunction ejecting the government from [their] property going forward." *Knick*, 588 U.S. at 199.

**3. Exhaustion.** The district court erred by requiring the landowners to exhaust state remedies. It held the landowners could bring a takings claim only after they "have 'used the procedure and been denied just compensation,'" as provided by the state. App. 186 (quoting *Williamson Cnty. Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 195 (1985)). But as the landowners explained, *Knick* overruled *Williamson County*'s state-litigation requirement. AOB at 35–36.

Relying on *Williams v. Utah Department of Corrections*, 928 F.3d 1209 (10th Cir. 2019), the state officials point out that "*Knick* did not alter the Eleventh Amendment state sovereign immunity analysis." Resp. at 25. And they argue that the Eleventh Amendment bars takings claims "when state courts are available to adjudicate" them. *Id.* at 24. To be sure, it is true that *Knick*—a case against a township—said nothing about sovereign immunity, and that federal courts generally will not hear claims for just compensation if a state forum is available. But the landowners don't seek just compensation. The reason sovereign immunity doesn't bar the landowners' claims has nothing to do with *Knick*—it is simply because the landowners have sought prospective injunctive relief through *Young*.

*Williams* involved an inmate who sued the state department of corrections and several individuals for failure to pay interest on his prison account as state law

required. 928 F.3d at 1211. His primary claim was for *damages* or *compensation*, monetary relief that implicated sovereign immunity for the familiar reason that it would bear on the state treasury. *See id.* (describing his claim as being for "withholding interest"); *id.* at 1214–15 (distinguishing other claims for prospective injunctive relief and dismissing them because they fell outside *Young*). The landowners acknowledge the prevailing law that a property owner cannot seek compensation from a state in federal court, even in a takings case. *See* AOB at 37 n.10. That is why they sought prospective injunctive relief through *Young*. *See 74 Pinehurst LLC v. New York*, 59 F.4th 557, 569 (2d Cir. 2023) (acknowledging this distinction through its holding that "sovereign immunity bars all of [the plaintiff's] due process and takings claims against the state defendants, except to the extent they sought prospective relief against Commissioner Visnauskas in her official capacity").

Effectively, the state officials try to smuggle in *Williamson County*'s abrogated exhaustion requirement under the guise of sovereign immunity. But *Knick* guarantees the landowners a federal forum. And although sovereign immunity bars compensation claims when a state remedy exists, it doesn't bar *Young* claims, state remedies or not. Indeed, the entire point of *Young* is to "permit the federal courts to vindicate federal rights." *Va. Off. for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 105

(1984)). Because sovereign immunity does not apply to claims for prospective injunctive relief against individual state officials, the landowners may proceed in federal court.[8]

## C. The State Officials' Additional Arguments Lack Merit

The state officials raise additional jurisdictional objections that were briefed below, but the district court did not reach. *See* Resp. at 37–38, 40–42. None have merit.

*1. "Comity abstention."* There are no grounds on which this Court (or the district court) may abdicate its "virtually unflagging obligation to hear and resolve questions properly before it." *FBI v. Fikre*, 601 U.S. 234, 240 (2024) (quotations omitted). The state officials ask this Court to do so based on nothing more than vague gestures toward "comity." Resp. at 40. But they point to no recognized doctrine that would permit abstention. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716–

---

[8] Even if any vestige of an exhaustion requirement existed, this Court has recognized that a property owner may satisfy *Williamson County*'s remaining finality requirement by showing that "pursuit of further administrative relief would be futile." *N. Mill Street, LLC v. City of Aspen*, 6 F.4th 1216, 1230 (10th Cir. 2021). Here, pursuing relief in state court would be fruitless because—like in *Cedar Point*—the state's highest court has foreclosed a takings claim. *See Cedar Point Nursery v. Gould*, No. 1:16-cv-00185, 2016 WL 1559271, at *4 (E.D. Cal. Apr. 18, 2016) (citing *Hacienda Valley Mobile Estates v. City of Morgan Hill*, 353 F.3d 651, 655, 659 (9th Cir. 2003), for the proposition that "[f]utility exists where a state court has 'specifically heard the cause of action at issue and denied it'"); *see also* AOB at 36–37. But since *Knick* overruled *Williamson County*'s state-litigation requirement, no futility exception is necessary.

17 (1996) (describing recognized doctrines). That dooms the case for abstention. As the Supreme Court has explained, outside of the narrow exceptions it has recognized, federal courts "should not refuse to decide a case in deference to the States." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013) (quotations and alteration omitted).[9]

This Court should reject the state officials' invitation to invent a freestanding "comity abstention." The state officials cite the state's "interest in interpreting its own constitution, resolving issues of state property law, retaining control of its natural resources, and preserving public access to those resources." Resp. at 41. But again, no one questions the state's power to interpret its constitution or property law. And most importantly, the Supreme Court has already weighed those considerations and determined they warrant abstention only when "unsettled questions of state law" could affect the outcome. *See Quackenbush*, 517 U.S. at 717.

The state officials are similarly incorrect to suggest that hearing the landowners' case would work "a sea change in the law, exposing every state decision that touches property … to federal nullification." Resp. at 42. The landowners' case would "nullify" state law only to the extent state law mandates the uncompensated

_____

[9] The state officials invoked *Thibodaux* abstention below, App. 086, but have abandoned that argument on appeal. That was a wise choice given that throughout their brief, they emphasize that the state court has finally settled the state constitutional issue. *See Quackenbush*, 517 U.S. at 717 (explaining *Thibodaux* abstention requires "unsettled questions of state law").

taking of private property. Far from a sea change, that has been the status quo since 1897 when the Supreme Court incorporated the Takings Clause. *See Chicago, B. & Q.R. Co.*, 166 U.S. at 236.

The state officials finally shift gears and invoke a New Mexico-only abstention based on the state's "unique history even among western states." Resp. at 41. The state officials' respect for New Mexico's history is admirable, but New Mexico has no more legitimate interest in violating the Constitution than does any other state.

At bottom, the state officials misunderstand federalism. Federalism is not a license for states to violate the constitutional rights of individuals. As the Supreme Court has explained, "states are not the sole intended beneficiaries of federalism." *Bond v. United States*, 564 U.S. 211, 222 (2011). "By denying any one government complete jurisdiction over all the concerns of public life, federalism protects the liberty of the individual from arbitrary power." *Id.* It is therefore particularly inappropriate for the state officials to invoke federalism to shield themselves from plausible claims that they have violated the landowners' individual rights.

**2. Rooker-Feldman.** "The *Rooker-Feldman* doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'" *Lance v. Dennis*, 546 U.S. 459, 460 (2006) (per curiam) (quoting

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). The state officials say Erik Briones's claim is barred because a state court entered a consent decree wherein he agreed not to violate *Adobe Whitewater*. But he is not challenging the consent decree and does not ask this Court to overturn it. The doctrine does not bar his claim.

*Rooker-Feldman* "is narrow in scope." *Bruce v. City & Cnty. of Denver*, 57 F.4th 738, 746 (10th Cir. 2023). It "is not triggered simply by the entry of judgment in state court." *Exxon Mobil*, 544 U.S. at 292. "[N]or does it bar a claim that does not seek to modify or set aside a state court judgment." *Bruce*, 57 F.4th 746. Instead, it protects the Supreme "Court's appellate jurisdiction over state-court judgments." *Exxon Mobil*, 544 at 291. Accordingly, "the question is whether a federal claimant seeks to appeal a state court judgment that the claimant could have appealed in state court." *Bruce*, 57 F.4th at 748.

Here, Briones does not seek appellate review of the consent decree. The state complaint against him invoked purely state law grounds for relief. App. 060–63. By contrast, the landowners argue only that the state-law public-access requirement is inconsistent with the Takings Clause, an issue that was expressly reserved in the consent decree. App. 095, 097. Briones therefore does not seek to "modify or set aside a state court judgment." *Bruce*, 57 F.4th 746. Thus, the state officials' claim that "Briones's claims depend on finding that the injunction was wrongly entered

against him," Resp. at 38, fails. Briones does not challenge the validity of the "injunction." He, like the other landowners, instead argues that the state law on which it was based is unconstitutional. That is an "independent claim" over which "there is jurisdiction." *Exxon Mobil*, 544 U.S. at 293 (quotation omitted).

Nor has "the state court judgment caused" Briones's injury. *Bruce*, 57 F.4th at 746. Although Briones agreed to remove fencing and signs and refrain from using or threatening to use force, App. 096, the state officials still threaten to prosecute him for excluding intruders by other means, such as nonviolently asking intruders to leave, verbally warning intruders not to trespass, or threatening legal action. And under the state officials' theory, the state constitution already prohibited all these actions.

Finally, the state officials' assertion that "there was nothing that prevented [Briones] from asserting the protections of the Fifth Amendment in the state court action," Resp. at 38, sounds in claim preclusion, not *Rooker-Feldman*. *See Johnson v. Spencer*, 950 F.3d 680, 708 (10th Cir. 2020). The state officials make no preclusion argument "in their appellate briefing," and thus "forfeited the issue." *See id.* at 707.

## II. The Landowners Plausibly Alleged a Takings Claim

As the landowners explained, they plausibly alleged "that the officials are enforcing—without compensation—public rights that did not exist before 2022."

AOB at 45. And they alleged that those public rights interfere with the landowners' ability to exercise their private property rights. *Id.* at 43. Thus, the landowners plausibly alleged a takings claim.

In response, the state officials argue that the landowners' claim is foreclosed by the state court's "determin[ation] of the law that the state constitution enshrined from pre-statehood law and practice." Resp. at 39. But again, neither the state court, nor the state officials, nor the state constitution, is the sole expositor of property rights protected by the Takings Clause. *Tyler*, 598 U.S. at 638. The Supreme Court has also looked to "[h]istory and precedent" to define property rights, *id.* at 639, including the state's past treatment of the property right, *id.* at 645. And as the landowners explained, "before 2022, all three branches of New Mexico government recognized that owners of non-navigable streambeds had the right to exclude trespassers." AOB at 42. Moreover, as the Supreme Court has recognized, "the right to exclude is 'universally held to be a fundamental element of the property right,' and is 'one of the most essential sticks in the bundle of rights that are commonly characterized as property.'" *Cedar Point*, 594 U.S. at 150 (quoting *Kaiser Aetna v. United States*, 444 U.S. 164, 176, 179–80 (1979)). The landowners plausibly alleged that they once had the right to exclude under state law, but no longer do.

The state officials suggest that the landowners' historical allegations "must be disregarded" because they are either "legal conclusions" or they contradict the state

court's judgment. Resp. at 30, 39. But this Court (and the district court) must "accept the allegations in the complaint as true." *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 806 (2019); *see* Fed. R. Civ. P. 12. And the landowners alleged specific *facts* showing that the state has long recognized their right to exclude. App. 023–24. That those facts *support* a legal conclusion is not a reason to discard them (such a rule would render pointless the entire pleading exercise). Indeed, because the legal conclusion is supported by factual allegations, it is by definition not "conclusory." Resp. at 39.

And although the state court surely has the power to interpret the state constitution, it is not the final word on the *federal* Constitution. Far from legal conclusions, the landowners' allegations that New Mexico traditionally recognized their right to exclude are essential facts that support the landowners' takings argument under any standard. *See Cedar Point*, 594 U.S. at 155 (complaint pleaded facts demonstrating that "without the access regulation, the growers would have had the right under California law"); *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.*, 560 U.S. 702, 715 (2010) (plurality opinion) ("If a legislature *or a court* declares that what was once an established right of private property no longer exists, it has taken that property[.]"); *accord Sheetz v. Cnty. of El Dorado*, 601 U.S. 267, 276–77 (2024). The landowners' complaint plausibly alleges that the state

officials are enforcing a taking of the landowners' right to exclude without compensation.

## CONCLUSION

For the foregoing reasons, this Court should reverse the judgment below and remand for further proceedings.

DATED: May 29, 2025.

Respectfully submitted,

CHRISTOPHER M. KIESER
JEREMY TALCOTT
AVERY G. RANUM
MARK L. ISH

By: /s/ Christopher M. Kieser
    CHRISTOPHER M. KIESER

*Attorneys for Plaintiffs – Appellants*

## Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type Style Requirements

1. This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 10th Cir. R. 32(B):

[x] this document contains 6,474 words, or

[ ] this brief uses a monospaced typeface and contains _____ lines of text.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[x] this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point, Times New Roman font, or

[ ] this document has been prepared in a monospaced typeface using _____ with _____.

Date: May 29, 2025.          /s/ Christopher M. Kieser_____
                             CHRISTOPHER M. KIESER
                             Pacific Legal Foundation
                             555 Capitol Mall, Suite 1290
                             Sacramento, California 95814
                             Telephone: (916) 419-7111
                             CKieser@pacificlegal.org

                             *Attorney for Plaintiffs – Appellants*